## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ATHANASIOS WALDRON,

    Plaintiff,

    v.

OFC. MOYOSORE OJO,
OFC. HOBBS,
MONTGOMERY COUNTY
CORRECTIONAL FACILITY,
WARDEN SUZY MALAGARI,
DEPUTY WARDEN SHELFORD GILLIAM,
LT. LINDA MAHOGANY,
LT. ANTHONY MUDALUE,
LT. KIRK DAY and
CASE MANAGER CELESTE HARVEY.

    Defendants.

Civil Action No.:  TDC-19-3105

## MEMORANDUM OPINION

Self-represented Plaintiff Athanasios Waldron filed this civil action pursuant to 42 U.S.C. § 1983 in which he alleges that correctional officers used excessive force against him while he was incarcerated at the Montgomery County Correctional Facility ("MCCF") in Boyds, Maryland. Defendants MCCF, Officer Moyosore Ojo, Warden Suzy Malagari, Deputy Warden Shelford Gilliam, Lt. Linda Mahogany, Lt. Anthony Mudalue, Lt. Kirk Day, and Case Manager Celeste Harvey (collectively "the County Defendants") have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Waldron was informed by the Court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a memorandum in opposition to the Motion could result in dismissal of the Complaint. To date, Waldron has not filed a response

to the Motion. Having reviewed the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

According to the Complaint, on October 11, 2019, at approximately 3:30 p.m., Officer Ojo ordered Waldron to place his hands through the food slot in his cell door in order to be handcuffed as part of a cell search procedure. Waldron, however, pulled his hands back when Ojo attempted to "slam" the handcuffs onto his wrists and thus caused Ojo's hands to be pulled into the food slot. Compl. at 3, ECF No. 1. Waldron put his hands back out, but he again pulled them in when Officer Ojo attempted to slam the handcuffs on. Waldron then requested that another correctional officer handcuff him, and Officer Hobbs stepped in to do so. According to Waldron, after he was taken out of his cell, Officer Ojo put his hands around Waldron's neck, pushed his face into the wall, started choking Waldron, and "slammed" him into the corner by a staircase. *Id.* Waldron further asserts that Officer Hobbs then began to choke him while Officer Ojo gouged his right eye with his thumb. Waldron "momentarily blacked out" and then was slammed to the ground and choked again, causing him to black out again. *Id.* at 4. Upon regaining consciousness, Waldron was placed in a restraint chair. Waldron was examined by medical staff and referred to see a doctor the following day but was not examined until three days after the incident.

Defendants assert in their brief, without submitting evidentiary support, that when Waldron was escorted out of his cell, he suddenly turned toward Officer Ojo, and that in light of Waldron's previous disobedience and in response to Waldron's sudden movement, Officer Ojo and Officer Hobbs took Waldron to the floor to gain control of him, kept hold of Waldron until additional personnel arrived to apply restraints, then placed him in a restraint chair. Defendants have submitted a video recording of the incident which shows the officers taking Waldron to the ground,

2

but does not provide conclusive evidence on the reason for that action or on whether the officers took the specific actions alleged by Waldron.

At an adjustment hearing on October 14, 2019 before Lt. Mahogany, Waldron was found guilty of an infraction. Waldron asserts that no proper investigation was conducted. Waldron filed a grievance against Officers Ojo and Hobbs on October 15, 2019. On October 17, 2019, Waldron asked Lt. Day and Case Manager Harvey to arrange for his transfer to another facility, but he was not moved. He also requested that Lt. Day relocate him to a different cell in segregation so that he could be better monitored, but he was not moved. On October 19, 2019, Waldron described his version of the events to Lt. Mudalue, who told him that he was going to review the video of the incident.

On October 15, 2019, Waldron signed the Complaint in the present case, which was received by this Court on October 24, 2019.

## DISCUSSION

The County Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In support of their Motion, the County Defendants assert several grounds for dismissal, including that (1) Waldron failed to exhaust administrative remedies; (2) MCCF is not an entity subject to suit; (3) Defendants Malagari, Gilliam, Mahogany, Mudalue, Day, and Harvey should be dismissed from the case because they did not personally participate in the alleged excessive force; (4) Waldron fails to state a valid claim for retaliation; (5) Officers Ojo and Hobbs used reasonable force against Waldron and did not violate the Eighth Amendment to the United States Constitution; and (6) Officers Ojo and Hobbs are entitled to qualified immunity. Although arguments are asserted on behalf of Officer Hobbs in the County Defendants' Motion, it is unclear whether service of the Complaint was accepted on his behalf.

3

Because this Court concludes that Waldron failed to exhaust administrative remedies prior to filing this lawsuit, the Motion will be granted as to all Defendants.

## I.      Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007). Courts must treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

4

Here, the notice requirement has been satisfied by the title of the County Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Waldron did not respond to the County Defendants' Motion and thus has not asserted that he needs additional discovery in order to address their Motion. The Court therefore may construe the County Defendants' Motion as a motion for summary judgment for purposes of the arguments requiring consideration of the submitted declarations and exhibits.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with "all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II. MCCF

MCCF asserts that it must be dismissed from this case because it is not a "person" subject to suit under § 1983. *See* 42 U.S.C. § 1983 (2018). A number of courts have held that a detention

facility is not a "person" subject to suit under § 1983. *See Smith v. Montgomery Cnty. Corr. Facility*, No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D. N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit"). Even if Waldron amended his Complaint to assert a claim against Montgomery County, rather than MCCF, the claim would fail. Waldron makes no allegations, as required to state a § 1983 claim against a local government, that a Montgomery County official acted pursuant to a government custom or policy violating his constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978). Therefore, the claims against MCCF will be dismissed.

### III.    Exhaustion of Administrative Remedies

The County Defendants assert the affirmative defense that Waldron failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2018). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

6

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S. Ct. at 1859–60.

MCCF has an established a five-step inmate grievance procedure, set out in the Montgomery County Department of Corrections and Rehabilitation Inmate Guidebook and Departmental Policy and Procedure Handbook. Rule 4002 of the Inmate Guidebook directs any inmate with a complaint to request an Inmate Grievance Form. First, inmates must complete and return the form to a correctional staff member for review and response. Inmates may either accept or disagree with the action taken by the staff member. Second, if the inmate disagrees with the action, appropriate personnel have five working days to conduct the same review process as the initial correctional staff member. Third, if an inmate disagrees with that determination, the inmate may appeal the decision to the appropriate Section Head or designee, who must respond within five working days. Fourth, if the inmate is dissatisfied with that response, the inmate may then appeal to the Warden for a review to be completed within five working days. Fifth, the Warden's determination may be appealed to the Department Director within five working days.

7

In his Complaint, Waldron asserts that he filed a grievance on October 15, 2019, four days after the events in question, in which he alleged excessive force by Officers Ojo and Hobbs. Also on October 15, 2019, Waldron signed the Complaint in this case, which was received by this Court on October 24, 2019. Since the initial grievance and Complaint were dated the same day, Waldron plainly did not exhaust the administrative remedies procedure outlined above before filing the present case. Indeed, in the Complaint, Waldron acknowledges that he did not receive a response to his grievance prior to filing the Complaint and that he therefore did not appeal any ruling on the grievance. *See* Compl. at 2. Where Waldron did not complete the five-step grievance process before filing the present action, he failed to exhaust available administrative remedies. The Motion will therefore be granted.

## CONCLUSION

For the foregoing reasons, the County Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED. Waldron's claim against MCCF will be DISMISSED WITH PREJUDICE. Waldron's remaining claims will be DISMISSED WITHOUT PREJUDICE based on a failure to exhaust administrative remedies. A separate Order shall issue.

Date:  August 27, 2021

THEODORE D. CHUANG
United States District Judge